Patsy McCOY, Appellant,

v.

WAL–MART STORES, INC., d/b/a Wal–Mart Discount Cities, Appellee.

No. 06–99–00170–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 20, 2001.

Decided Oct. 16, 2001.

Frederick H. Shiver, Parham, Jones & Shiver, LLP, Dallas, Ronald D. Wren, Bedford, for appellant.

Scott A. Whisler, Kimberly P. Harris, Grau & Bassett, PC, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Patsy McCoy appeals from a take-nothing judgment in her personal injury suit against Wal–Mart. McCoy's sole point of error alleges that the trial court's rulings during the voir dire examination deprived her of an adequate opportunity to exercise challenges for cause, resulting in unqualified and improper persons serving on the jury.

McCoy sued Wal–Mart for injuries she sustained when glassware and plates fell on her head. The jury found Wal–Mart was not liable for McCoy's injuries. The trial court rendered judgment pursuant to the jury verdict.

A review of the original record reveals that on the day of trial, the trial court first gave preliminary instructions to the prospective jurors and informed them that each side of the case would be allowed thirty minutes for their respective voir dire examination. The court then directed each member of the panel to recite certain background information, including occupation, marital status, religious preference, and other pertinent facts. Following these recitations, there was an unreported conference of counsel at the bench, and McCoy's counsel then commenced his voir dire questioning. He first briefly stated his perception of the facts of the case and then engaged each member of the panel in a dialogue concerning his or her answer to the following question: "[W]hy would somebody blame a company for their injuries rather than accept responsibility for themselves?" Counsel asked other open-ended questions that elicited responses in the form of opinions and would sometimes ask a panel member to state his or her opinion about another's opinion they had just heard. After about ten minutes of these exchanges between McCoy's counsel and some of the prospective jurors, the

trial court called counsel to the bench and gave McCoy's counsel the following warning:

> I am sure all your questions [are] good questions; but, if you persist in this type questioning—you haven't even finished the third row. And you are not entitled to individual voir dire which is essentially what you are doing. If you want to ask questions about their bias or prejudices; but, you are using up your time on these kind [sic] of questions. So you had better speed it up if you want to get through.
>
> . . . .
>
> [Y]ou are not entitled to go over with them one by one on each row and ask them how they feel about this and how they feel about that. You can never get through in thirty minutes. You are going to get thrity [sic] minutes; so, move along. You have used over ten minutes.

Counsel for McCoy then varied his approach slightly, first asking questions of the panel as a whole and asking questions of individual panel members eliciting specific information. However, he still persisted in asking some, albeit fewer, open-ended questions to selected venirepersons, such as: "Ms. Maloney . . . [h]ow do you put a value on pain and suffering as a result of injury?" and "Ms. Coon . . . [s]ome people feel that lawsuits have gotten out of hand, some plaintiffs sue everybody just to find the deepest pockets. What is your reaction to that?"

Before completion of his voir dire questioning, the trial court informed counsel for McCoy his time was up, but he would be given "about two minutes" more. Shortly thereafter, the trial court interrupted counsel again to advise that his time was up. McCoy's counsel then tendered to the court what he characterized as "a list of the general questions that still

need to be asked," but which appear to be the last two pages of his voir dire notes. The trial court's response to this tender was: "I think you have had plenty of time to ask these. You chose a manner of questioning that prevented you from getting to them. So, your motion is denied. I have given you multiple warnings about that."

At the conclusion of Wal–Mart's counsel's voir dire examination, there was an unrecorded bench conference with counsel after which McCoy's counsel requested, on the record, permission to further question eight veniremembers relating to issues raised during either his own questioning or during defense counsel's questioning. The trial court denied this request. The lawyers were then given ten minutes in which to strike their jury lists, after which there was another unreported bench conference. McCoy's counsel then stated on the record that because of the court's refusal to allow him to ask further questions, he was required to exhaust his peremptory challenges, resulting in three persons to whom he objected serving on the jury.

The case proceeded to trial, at the conclusion of which the court rendered a take-nothing judgment pursuant to the jury's verdict. McCoy filed a notice of appeal. After the reporter's record was filed with this Court, but before the briefs were filed, McCoy filed a motion to abate pursuant to Tex.R.App. P. 34.6(e), alleging there was a dispute between the parties as to what occurred at three unreported bench conferences reflected in the reporter's record and asking that the cause be abated to the trial court for a determination. This Court granted McCoy's uncontested motion and ordered the trial court to provide a supplemental record. The trial court complied and filed a supplemental record consisting of its findings, an affidavit by the court reporter explaining why the

questioned bench conferences were not reported, and conflicting affidavits from trial counsel for McCoy and Wal–Mart concerning those conferences. Because the motion to abate was unopposed, and because Rule 34.6(e)(3) authorizes the appellate court to submit such disputes to the *trial court* for resolution, we will, under the circumstances of this case, accept that court's findings as conclusive regarding what occurred at those three bench conferences.

The first bench conference in question occurred after the veniremembers had given their personal background recitations and just before McCoy's counsel commenced his voir dire examination. At that conference, according to the trial court's findings, the court advised counsel that "each side should allot thirty minutes for questioning. Challenges for cause would be taken up at the bench at the conclusion of voir dire."

The second bench conference in controversy occurred after Wal–Mart's counsel completed his voir dire examination and the lawyers were invited to the bench "for challenges for cause." In its findings, the trial court found that at this conference counsel for McCoy requested more time to ask additional questions and the court informed him that he had used his time and that he should make his challenges.

The third questioned bench conference occurred after the court had given the lawyers ten minutes in which to strike their jury lists, but before McCoy's counsel turned in his list to the clerk. The court found that at this conference McCoy's counsel requested an opportunity to make a record of those jurors to whom he objected, but who served on the jury because the court denied his challenges for cause. The court permitted him to make this record.

The trial court's findings further state its reasons for denying McCoy's counsel's request for additional questioning of the individual veniremembers:

> [McCoy's counsel's] questioning failed to give rise to a challenge for cause which he could then develop by individual voir dire if necessary later at the bench. The discussion at the bench amounted to the Court informing Counsel that he had used more than his allotted time, he persisted in using time on nonspecific open-ended questions rather than [sic], and that he had used up his time for questioning.

■ Generally speaking, the scope of voir dire examination is a matter which rests largely in the sound discretion of the trial court. *Babcock v. Northwest Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex.1989). A court abuses its discretion when its denial of the right to ask proper questions on voir dire examination prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges. *Id.* To obtain a reversal, an appellant must show that the trial court abused its discretion and that the error was calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App. P. 44.1; *Babcock*, 767 S.W.2d at 709.

■ In reviewing a contention that the trial court abused its discretion by not allowing a party to ask further questions of the veniremembers to discover any bias or prejudice, three factors are relevant: 1) whether a party's voir dire examination reveals an attempt to prolong the voir dire; for example, whether the questions were irrelevant, immaterial, or unnecessarily repetitious; 2) whether the questions that were not permitted were proper voir dire questions; and 3) whether the party was precluded from examining veniremembers who served on the jury. *Torres v. State*, 4

S.W.3d 832, 835–36 (Tex.App.—Texarkana 1999, pet. ref'd); *Splawn v. State*, 949 S.W.2d 867, 871 (Tex.App.—Dallas 1997, no pet.).

■ In this case, there is evidence that McCoy's counsel's approach to voir dire had the effect of unnecessarily prolonging it. He spent considerable time asking individual veniremembers open-ended questions designed to elicit answers in the form of opinions, and on occasion he would then ask other veniremembers to state their opinions about the opinions they had just heard. Early on in counsel's voir dire examination, it was apparent that he understood—correctly or not—that he would be allowed to ask follow-up questions later in front of the judge at the bench. However, ten minutes into his voir dire examination, the court warned him that he was wasting time and would run out of time if he persisted in the approach he was taking, and warned that he had already used more than ten of his allotted thirty minutes. Although altering his approach slightly after this warning, counsel still posed open-ended questions to certain venirepersons that had the effect of prolonging voir dire.

At the end of the thirty minutes of allotted time, counsel requested more time in which to ask some general questions. The court denied this request. At the end of defense counsel's voir dire examination, McCoy's counsel made a record of the eight veniremembers he wanted to further question and the purposes of this additional questioning. The trial court denied the request as to each of the eight persons. The initial questions and answers of these eight venirepersons and counsel's request for additional questioning are as follows:

1.

[WAL–MART'S COUNSEL]: Mr. Mersino, how do you know him [Pinkie Palmer, one of Wal–Mart's lawyers]?

PROSPECTIVE JUROR: He has represented our company in a few matters.

. . . .

[*McCOY'S COUNSEL'S REQUEST*]: Mr. Mersino . . . said that Mr. Palmer represented his company and I need to ask questions from him to determine whether or not there is a bias or prejudice.

### 2.

[McCOY'S COUNSEL]: Ms. Slusher . . . have you ever known someone who has lost their ability to work as a result of an injury?

PROSPECTIVE JUROR: Yes.

[McCOY'S COUNSEL]: Do you feel like a person like that should be compensated for their lost wages?

PROSPECTIVE JUROR: Uh—yeah. In a lot of instances, I think sometimes things are falsely put out—information. But, most of the time, I think they should be.

[McCOY'S COUNSEL]: When you say "things are put out—false information?"

PROSPECTIVE JUROR: Well, I think sometimes we exaggerate. . . . Our minds just kind of takes [sic] over and we don't see things as clearly then for ourselves.

[McCOY'S COUNSEL]: Certainly. Would it have a role with you if doctors, medical people were involved in sharing with you the damages that a person has suffered?

PROSPECTIVE JUROR: I think so.

. . . .

[*McCOY'S COUNSEL'S REQUEST*]: It had to do with people that have been injured and they think they are hurt worse than they really are and I need to determine whether or not there is bias about this type of injury.

### 3.

[WAL–MART'S COUNSEL]: . . . [H]as anybody here ever had a bad experience at Wal–Mart? . . . Mr. Ormes, you kind of shook your head. What is your tale of woe?

PROSPECTIVE JUROR: I was injured in Wal–Mart. . . . I jumped up to pull a box off. It came down and hit me. It was stupid on my part.

. . . .

[*McCOY'S COUNSEL'S REQUEST*]: . . . [W]e need an opportunity to determine how he would feel about Mrs. McCoy's situation, whether or not she was stupid and whether or not he has any pre-conceived ideas.

### 4.

[McCOY'S COUNSEL]: . . . Mr. Hook? . . . You are a Church of Christ minister. . . . Why would someone choose to blame a company for their injuries rather than accept responsibilities for themselves?

PROSPECTIVE JUROR: I kind of agree with the statement that I don't have enough information to make a statement. I feel for the most part, we don't accept enough responsibility for our own actions. So many times we just do not blame ourselves and too quick to point our fingers elsewhere.

. . . .

[*McCOY'S COUNSEL'S REQUEST*]: Mr. Hook . . . who is a Church of Christ minister. He . . . commented that people should be more responsible for their own actions.

## 5.

[McCOY'S COUNSEL]: ... [W]hy would somebody choose to blame a company for their injuries, rather than accept responsibility themselves? Mr. Anders [sic], what is your reaction to that?

PROSPECTIVE JUROR: ... Do they want money or—I don't have enough to make a judgment.

[McCOY'S COUNSEL]: ... Not asking you to make a judgment at this point. Just sort of asking you what thoughts go through your mind when you hear something like that.

PROSPECTIVE JUROR: Well, on a day to day basis, I work for SWEPCO and.... They have people injured from time to time. Where something fell.

[McCOY'S COUNSEL]: Customers?

PROSPECTIVE JUROR: Customers. Sometimes it actually didn't happen and sometimes it did and sometimes, you know, it is our fault and if it is we have to take care of it.

. . . .

[*McCOY'S COUNSEL'S REQUEST*]: Mr. Andres ... said that he works for a company that has people that are injured. He says people cause their own problems and it needs to be explored as to whether there is a bias or prejudice there.

## 6.

[McCOY'S COUNSEL]: Mr. Brown, you heard Mr. McClenny's statement about how a customer should feel when they walk into a public store. How do you feel about that?

PROSPECTIVE JUROR: I think you need to watch out for yourself.

[McCOY'S COUNSEL]: Well, tell us what you mean by "you need to watch out for yourself?"

PROSPECTIVE JUROR: I used to work retail and you would put things on the rack and people would check things out and it would fall down.

[McCOY'S COUNSEL]: ... How would you feel about a company that actually has one of those tests and it is called a bump test. You are supposed to bump it and it not come off.

PROSPECTIVE JUROR: You get all kinds of people in a store.

[McCOY'S COUNSEL]: ... Do you think that your feelings about having worked in retail would color how you would view the evidence in this case?

PROSPECTIVE JUROR: I don't know. It depends on the evidence.

[McCOY'S COUNSEL]: And I understand and it would be improper for me at this point to get you to commit to the evidence in this case.... But, tell us generally how—what your experiences has [sic] been about customers versus what the responsibilities are for a store in this situation?

PROSPECTIVE JUROR: ... You need to offer a safe, working place; but you can't prevent idiots from coming in the store.

[*McCOY'S COUNSEL'S REQUEST*]: Similar situation with ... Mr. Brown [as with prospective juror Andres].

## 7.

[McCOY's COUNSEL]: ... Mr. Peacock ... have you ever known someone who has been injured and lost their ability to work due to the injury?

PROSPECTIVE JUROR: I have known some that have claimed that they were injured. Yes.

[McCOY'S COUNSEL]: ... Have you ever known a family member or a friend or a neighbor who has been injured and lost their ability to work?

PROSPECTIVE JUROR: Yes.

[McCOY'S COUNSEL]: The ones that you know about, tell us how you knew about that?

PROSPECTIVE JUROR: They worked for me.

. . . .

[McCOY'S COUNSEL]: What was that business?

PROSPECTIVE JUROR: I worked for Dresser Oil Tools in Longview.

. . . .

[*McCOY'S COUNSEL'S REQUEST*]: . . . Mr. Peacock. He is a supervisor for a plant and I need to determine whether there is any bias or prejudice.

8.

[WAL–MART'S COUNSEL]: . . . Ms. Maloney, how do you know Pinkie [Palmer]?

PROSPECTIVE JUROR: We attend the same church.

[WAL–MART'S COUNSEL]: You are not going to hold that against him; are you?

PROSPECTIVE JUROR: No.

. . . .

[*McCOY'S COUNSEL'S REQUEST*]: . . . Ms. Maloney says she knows Mr. Palmer. Says she knows him well. We need to explore whether she can be fair based on whether there is a bias. Mr. Palmer being one of the attorneys for Wal–Mart.

■ Many of the areas identified in counsel's requests were proper for additional questioning. However, the trial court found, and we agree, that the initial questioning failed to develop a challenge for cause and that counsel would have had sufficient time to further explore these matters had he not spent so much time asking improper questions to individual venirepersons. Attorneys have a duty to appropriately budget their time for voir dire questioning within the reasonable limits set by the trial court. *Whitaker v. State*, 653 S.W.2d 781, 781 (Tex.Crim.App. 1983); *Torres*, 4 S.W.3d at 836; *Thacker v. State*, 889 S.W.2d 380, 391 (Tex.App.— Houston [14th Dist.] 1994, pet. ref'd). Having wasted valuable time asking open-ended questions of individual venire-members, counsel cannot now complain of being deprived of the opportunity for further questioning.

■ Three of counsel's requests for additional questioning pertained to matters raised by defense counsel in his voir dire examination. Two of these had to do with panel members who were acquainted with one of Wal–Mart's attorneys. The other had to do with a panel member who had a bad experience at Wal–Mart. There is no indication that McCoy's counsel was prohibited from pursuing these matters during his own voir dire questioning. The only plausible reasons for his failure to do so are that he ran out of time, or it did not occur to him to ask about these matters. Either way, his inability to question these panel members regarding these matters was of his own making. The trial court did not abuse its discretion in not allowing counsel to reopen his voir dire examination with these panel members on these topics.

■ The final question is whether counsel was precluded from examining venire-members who actually served on the jury. McCoy's counsel individually examined all eight of the veniremembers he wanted to further question. Three of those eight served on the jury: Willa Slusher, Aven Hook, and Roberto Maloney. Counsel requested additional time to question Slusher concerning her possible bias about the type of injury involved. However, counsel had already developed considerable information from Slusher on this subject, and

he failed to specify any additional questions he wanted to ask. Further, when asked about damages, Slusher indicated she would follow the evidence. McCoy's counsel's request to further question Hook had to do with Hook's expressed opinion that people should be responsible for their own actions. Again, counsel failed to state any additional specific questions he wanted to ask. Finally, McCoy's counsel requested additional time to question Maloney regarding her acquaintance with one of Wal–Mart's attorneys, which was disclosed during defense counsel's questioning. Again, there is no showing that McCoy's counsel was prohibited from inquiring into any relationship that any of the panelists had with any of the attorneys in the case had he chosen to do so. Further, Maloney indicated at the time of the disclosure that her acquaintance with the attorney would not influence her as a juror. We find that counsel was not precluded from examining veniremembers who served on the jury.

The trial court did not abuse its discretion in denying counsel's requests for additional questioning. McCoy's sole point of error is overruled.

By our holding, we do not intend to imply that a trial court's discretion in the conduct of voir dire examination is unlimited. We recognize that voir dire questioning is possibly the most important part of any jury trial and that the parties in any given case should be afforded full opportunity to examine the jury panel with no more interference from the trial court than necessary. We also recognize that not all lawyers approach voir dire questioning the same way, nor should they. Our system is capable of accommodating a variety of strategies in selecting a jury, and the innovative advocate should not be punished for not doing it the same way an opponent does, or even the same way the trial court would. However, counsel should always be realistic and give due respect to the court, opposing counsel, the veniremembers, and other litigants. With our dockets over-burdened and the courts constantly pressured to keep the cases moving, the trial courts must be given considerable latitude in controlling voir dire examinations, so that the time allotted for this important part of the trial is put to its best use. Voir dire questioning is typically done while other parties and their counsel wait their turn. In a rural jurisdiction, such as the one where this case was tried, it is not uncommon for a single jury panel to sit through the voir dire of multiple cases in a single day.

█ We recognize that justice should never be sacrificed for the sake of expediency. The parameters set for voir dire questioning should always be fair and reasonable, and take into consideration the complexity and uniqueness of each case. These boundaries should also be flexible, subject to exceptions as justice and the circumstances require.

Because voir dire questioning is such an important part of the proceeding, counsel should plan for it well in advance and be prepared to elicit from the veniremembers all necessary information within the parameters set by the court. The prudent lawyer will recognize that this may require some adjustment of the voir dire questioning from what that lawyer would prefer to what must be done within the time allotted.

In this case, it appears there was an initial misunderstanding on the part of McCoy's counsel as to the procedure to be followed by the trial court in ruling on challenges for cause. However, ten minutes into his voir dire questioning, the trial court warned that he would not be able to complete his questioning in the thirty minutes allotted if he persisted in the approach he was taking. Counsel should

802

have heeded the trial court's warning and adjusted his voir dire examination to accommodate the court's parameters. Had he done so, he could have asked the questions that his own unfortunate choice precluded him from asking. This was not a complex case, nor was it so unique as to require extraordinary consideration in voir dire questioning. Defense counsel had no difficulty complying with the thirty minutes allotted. We perceive no reason why McCoy's counsel could not also comply.

We affirm the judgment.