In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00227-CR


______________________________




MELVIN GOODSPEED, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 00-F-0659-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 This case presents the issue of whether trial counsel's conduct was so deficient, and presented
professional errors of such magnitude, that it caused prejudice to the defendant, and that, but for
counsel's ineffective assistance, there is a reasonable probability the result of the case would have
been different. If so, the legal process has failed and we can have no confidence in the outcome of
the trial.

 A jury convicted Melvin Goodspeed of aggravated sexual assault and assessed punishment
at ninety-nine years' imprisonment. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i) (Vernon 2003)
(child victim). In a single point of error, Goodspeed contends he received ineffective assistance of
counsel at trial from his attorney because counsel, among other things, conducted no meaningful voir
dire examination and used two peremptory challenges on veniremembers previously excused by the
court. We reverse the judgment and remand the case to the trial court for a new trial. 

I. Standard of Review

 The standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on a claim of ineffective assistance,
an appellant must, by a preponderance of the evidence, prove: (1) trial counsel's performance fell
below an objective standard of reasonableness, and (2) counsel's deficient representation prejudiced
appellant's defense. Strickland, 466 U.S. at 688; Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim.
App. 2002); Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, an
appellant must show that the attorney's representation fell below the standard of prevailing
professional norms and that there is a reasonable probability that, but for the attorney's deficiency,
the result of the trial would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App.
2000). In other words, the appellant must prove counsel's representation so undermined the proper
functioning of the adversarial process that the trial cannot be relied on as having produced a just
result. Strickland, 466 U.S. at 686. If, however, "there is at least the possibility that the conduct
could have been legitimate trial strategy," then we must "defer to counsel's decisions and deny relief
on an ineffective assistance claim on direct appeal." Murphy v. State, No. 74,145, 2003 Tex. Crim.
App. LEXIS 118, at *18 (Tex. Crim. App. June 25, 2003).

II. Analysis

 Goodspeed complains his trial counsel's voir dire consisted of no meaningful questions. To
its credit, the State "concedes that Goodspeed's trial counsel did not ask any questions of the venire
panel as a whole during the defendant's voir dire." (1) (Emphasis added.) The State, however, contends
Goodspeed's trial counsel opted not to ask repetitious questions in light of the State's own extensive,
nearly two-hour-long voir dire. Thus, the State argues counsel's failure to ask repetitious questions
should not constitute deficient performance.

 A defendant's constitutional right to counsel includes the right to question prospective jurors
so the defendant may intelligently exercise peremptory challenges. See Powell v. Alabama, 287 U.S.
45, 69 (1932) (defendant requires counsel's guiding hand at every step of proceedings); Howard v.
State, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996); Roise v. State, 7 S.W.3d 225, 244 (Tex.
App.-Austin 1999, pet. ref'd). The Sixth Amendment guarantees the "assistance of counsel." U.S.
Const. amend. VI. Part of this constitutional guarantee is an adequate voir dire to identify
unqualified jurors. Morgan v. Illinois, 504 U.S. 719, 729 (1992) (citing Dennis v. United States, 339
U.S. 162, 171-72 (1950)). Essential to this guarantee is the right to question veniremembers in order
to intelligently exercise peremptory challenges and challenges for cause. Linnell v. State, 935
S.W.2d 426, 428 (Tex. Crim. App. 1996) (citing Nunfio v. State, 808 S.W.2d 482 (Tex. Crim App.
1991); Dinkins v. State, 894 S.W.2d 330, 344-45 (Tex. Crim. App. 1995)). The right to propound
questions on voir dire, in order to intelligently exercise peremptory challenges, is of the greatest
importance. Hernandez v. State, 508 S.W.2d 853 (Tex. Crim. App. 1974). Voir dire is, perhaps, the
most important part of any jury trial. See McCoy v. Wal-Mart Stores, Inc., 59 S.W.3d 793, 801 (Tex.
App.-Texarkana 2001, no pet.); H. Lee Godfrey, Civil Voir Dire in Texas: Winning the Appeal
Based on Bias or Prejudice, 31 S. Tex. L. Rev. 409, 437 (1990) (citing J. Appleman, Preparation
& Trial 174 (1967)). Voir dire determines the composition of the jury that not only determines
guilt, but may also assess punishment. Thus, what occurs during voir dire permeates the entire trial.

 The purpose of voir dire questioning is to determine whether a potential juror should be
challenged for cause or peremptorily, or whether he or she should be accepted by the examining
party for service on the jury. Eason v. State, 563 S.W.2d 945, 946-47 (Tex. Crim App. 1978);
3 Charles E. Torcia, Wharton's Criminal Procedure § 419 (13th ed. 1991). The questioning
party may ask a potential juror any pertinent question "tending to establish the ground for challenge,
such as disqualification for service on any jury, implied bias, or actual bias." 3 Charles E. Torcia,
Wharton's Criminal Procedure § 420 (13th ed. 1991). Such questions are necessary because
"[f]ull knowledge of all relevant matters is essential to a fair exercise of the right to challenge either
for cause or peremptorily . . . ." 3 Charles E. Torcia, Wharton's Criminal Procedure § 421
(13th ed. 1991). 

 Voir dire may also serve to prepare the jury for difficulties likely to be encountered in the
case, it may serve to educate the jury on the applicable law, or it may serve to curry favor for one
side or the other. 3 Texas Criminal Practice Guide: Trial § 72.03[1] (Matthew Bender & Co.
ed., Aug. 2003). If a defendant's lawyer fails to question prospective jurors during voir dire, then
he or she does nothing to solicit evidence for use in challenging the juror, does nothing to educate
the jury about the applicable law or potential difficulties of the case, and does nothing to engender
favor for the defendant. It has been held that a lawyer who asks no questions of a venire during voir
dire provides no assistance to the defendant, and no conceivable trial strategy would permit counsel
to waive voir dire. See Miles v. State, 644 S.W.2d 23 (Tex. App.-El Paso 1982, no pet.). 

 Counsel's waiver of Goodspeed's right to solicit information from prospective jurors (when
such information could only help assist in intelligently exercising peremptory strikes) falls well
below the objective standard of reasonableness. Given the need for fair and impartial jurors, careful
and precise voir dire questioning by defense counsel usually tends to elicit answers that form the
basis of a challenge for cause or, alternatively, provide a gender or race-neutral reason for the
exercise of a peremptory challenge. (2)

 Moreover, by failing to examine the panel, the defense never had an opportunity to determine
if any of the members of the venire should have been disqualified for not being able to consider the
full range of punishment. Goodspeed was eligible for community supervision (formerly referred to
as probation). See Tex. Code Crim. Proc. Ann. art. 42.12, § 4(e) (Vernon Supp. 2003). The jury,
therefore, had the authority to grant community supervision as a possible punishment in the event
it found Goodspeed guilty. To serve on the jury, each veniremember must be able to consider
community supervision in assessing punishment. Tex. Code Crim. Proc. Ann. art. 35.16(c)(2)
(Vernon Supp. 2003). Experience tells us that many people are unable to consider community
supervision as a punishment for a sexual assault charge, especially when the victim is a child. It is
not an aberration for entire jury panels to be dismissed because such a large number of jurors express
opposition to community supervision in these cases and, by law, are unable to serve.

 The State responds that defense counsel's failure to ask about community supervision is not
harmful because the State explained to the jury Goodspeed was eligible for community supervision. 
However, a careful reading of the record reveals the State did not clearly ask the specific question
of whether each panelist could consider community supervision. The State did explain that the range
of punishment was "probation up to 99 years or life" and then asked the panel if there was anyone
who would not consider it. Before receiving any response, the State then began to give a lengthy
(almost a full page in the record) explanation concerning assessing punishment, without mentioning
community supervision. The ultimate question after the explanation was, "I'm assuming all of you
are telling me that you would be able to consider the range, the penitentiary time, . . . if the facts
warranted incarceration. You all can do that for me? Okay." Accordingly, we are unpersuaded that
the State's mention of community supervision-without clearly inquiring as to whether the
veniremembers could consider community supervision as a sentencing option-ameliorates defense
counsel's abdication of his responsibilities as Goodspeed's advocate. See Armstrong v. State, 897
S.W.2d 361, 363 (Tex. Crim. App. 1995) (defense counsel has obligation to ask questions calculated
to bring out information that might indicate juror's inability to be impartial). Such conduct was artful
advocacy on behalf of the State, but required a proper response and clarification from the defense
attorney. The failure to respond bolsters our conclusion that counsel's assistance fell below
reasonable standards of conduct during this critical stage of the trial. In this case, we can find no
reasonable trial strategy permitting defense counsel to abandon the duty to question the venire.

 Our finding that counsel's performance was deficient is further required by the fact that
Goodspeed's trial attorney used peremptory strikes on prospective jurors Sharon Kelly and Jennie
George, even though these members of the venire had already been excused for cause by the trial
court. Goodspeed's trial attorney essentially wasted two peremptory strikes. The right to effective
assistance of counsel during voir dire necessarily includes counsel's intelligent use of peremptory
strikes. See, e.g., Taylor v. State, 109 S.W.3d 443, 452 (Tex. Crim. App. 2003) ("Texas
Constitution's right to counsel encompasses the right to ask proper questions in order to intelligently
exercise for cause and peremptory challenges . . . ."); Abron, 523 S.W.2d at 409. We do not agree
with the State's suggestion that the use of two peremptory challenges on people who had been
excused does not cast extreme doubt on whether Goodspeed's counsel was actively participating in
the adversarial process to ensure a fair and just trial.

 Having found counsel's performance during voir dire fell below an objective standard of
reasonableness, we must now decide whether counsel's performance so undermined the adversarial
process that the trial cannot be seen as having produced a just result. Strickland, 466 U.S. at 686. 
Given the severe facts of this case, the answer is an unqualified "Yes."

 Like a tiny pebble thrown in the midst of a calm lake, the ripple effects of ineffective
assistance during voir dire permeate the trial from beginning to end. It is the loss of a chance to
educate the panel-the missed opportunity to explain applicable law in a light favorable to the client. 
 It is the abandonment of counsel's first opportunity to curry favor among the jury for the client. It 
 is counsel's abdication of a responsibility to solicit information that permits the intelligent, rather
than wasteful, exercise of peremptory strikes. A proper voir dire examination would have ensured
that all jurors were qualified to consider the entire range of punishment. Those jurors having some
hesitation or reluctance to consider the full punishment range could have been identified. If the
attorney had not forfeited two peremptory challenges by striking jurors previously excused by the
court, at least two additional jurors with reluctance to consider the full range of punishment could
have been struck by the defendant. Without doubt, had counsel not exercised peremptory challenges
on veniremembers excused by the court, the jury would have been differently composed. When
defense counsel's performance during the voir dire of a criminal trial falls below objective norms,
without any reasonable basis in trial strategy, as is the case here, we can only conclude we have no
confidence in the outcome of the trial. We believe under these circumstances there is a reasonable
probability that, but for counsel's deficient conduct, the resulting sentence would have been different. 
This undermines confidence in the outcome of the trial. Any different result would have benefitted
the defendant. We sustain Goodspeed's point of error.

 Our holding is not based on the jury's assessment of a ninety-nine-year sentence, but in our
belief that counsel's deficient representation so undermined the proper functioning of the adversarial
process that the trial cannot be relied on as having produced a just result. See id. Thus, for the
reasons stated, we hold Goodspeed did not receive the assistance of counsel required under the
United States and Texas Constitutions. 

 We reverse Goodspeed's conviction and remand the case to the trial court for a new trial.




 Jack Carter

 Justice



Date Submitted: July 11, 2003

Date Decided: October 2, 2003


Publish
1. The record overwhelmingly supports the State's concession. The orations of Goodspeed's
counsel during voir dire last a mere seven pages of the record and consist of no questions to, nor
answers from, the venire panel. 
2. In Abron, the trial court refused to allow the defendant to ask prospective jurors questions
about racial prejudice. (The defendant was black and charged with rape; the victim was white.) The
Texas Court of Criminal Appeals stated, "Answers to the more specific questions regarding racial
prejudice would have been valuable to appellant because they could have furnished a basis for the
intelligent exercise of peremptory challenges. Deprivation of this valuable right is a showing of
injury sufficient to necessitate reversal." Cf., Abron v. State, 523 S.W.2d 405, 409 (Tex. Crim. App.
1975). The Abron court then reversed the defendant's conviction and remanded the case for a new
trial. See also Smith v. State, 513 S.W.2d 823, 826 (Tex. Crim. App. 1974) (voir dire questions elicit
grounds for challenge for cause as well as basis for use of peremptory strikes).