

|  |  |
|---|---|
| CRYSTAL YANEZ, | No. 08-19-00055-CV |
| Appellant, | Appeal from the |
| v. | 448th District Court |
| DAVID HERNANDEZ, JR., | of El Paso County, Texas |
| Appellee. | (TC# 2016DCV0289) |

# **O P I N I O N**

When are time limitations on voir dire questioning arbitrary and unreasonable? It is an issue for appellate courts numerous times over the years and one we address again today. Appellant objected to the trial court regarding its policy of limiting general voir dire to thirty minutes per side, with an additional hour for questions of individual venire members. In a two-car motor vehicle accident, Appellee, David Hernandez, Jr., admitted liability prior to trial and trial was limited to determining damages. The jury awarded $1,500.00 to Appellant for past lost wages and awarded zero for mental anguish damages. Appellant claims the time limitation on voir dire was arbitrary and unreasonable under the circumstances and deprived her of a fair trial because she was unable to uncover particular biases held by some of the jurors as a result of the time limitation. We disagree and affirm the judgment of the trial court.

## **BACKGROUND**

### *Factual Background*

On March 12, 2015, Appellant was driving through a right of way and struck a tow dolly attached to Appellee's pickup truck. As Appellant approached him, Appellee claimed he did not realize a portion of the tow dolly extended into the street.

Appellee admitted his fault at the time of the accident and again in an answer filed prior to trial. Appellant claimed physical, emotional, and lost wage damages. Past and future medical expenses were not at issue before the jury. At trial, only damages were contested.

### *Voir Dire*

The trial court informed the parties he was limiting each side to thirty minutes for general voir dire of the panel. The parties were not limited, however, on what topics each could address with the panel during their time other than routine prohibitions on discussing specific facts of the case or asking venire members for dollar amounts they would feel comfortable awarding. Regardless of how each party chose to allocate their time, the trial court informed them he intended to cut off general voir dire at thirty minutes for each. However, the trial court also gave the parties an additional hour to bring jurors before the bench for individual questioning prior to deciding on their respective strikes. In effect, each side had one and a half hours to voir dire the panel, thirty minutes for general voir dire and one hour for individual questioning of venire members.

The record before us did not give specific, detailed time stamps showing how many minutes were spent by any party on a particular topic of questioning. Appellant began general voir dire by choosing several venire members to ask about issues they are passionate about. Those issues ranged from community service to travel to environmental issues to family. Appellant then gave a Centers of Disease Control statistic to the venire panel regarding injuries due to motor vehicle accidents and asked individual venire members and the panel as a whole how they felt about the statistic, whether they found it shocking, and whether they believed individuals who

2

admit to causing a motor vehicle accident should be held responsible for their actions. Appellant specifically discussed with the venire panel whether any of them would be unwilling to award any damages because the at-fault person admitted to causing the incident, which revealed several venire members who were unwilling to do so and thus struck for cause.

Appellant also asked the venire panel if anyone would be unwilling to or uncomfortable awarding damages for mental anguish or pain and suffering since those types of damages are not quantifiable with hard data. His questions regarding this subject elicited responses from several venirepersons indicating they would not be able to award mental anguish or similar intangible damages, who were subsequently struck for cause. Based on time warnings given to counsel by the trial court, Appellant's questions on mental anguish and similar types of damages lasted approximately five minutes. Appellant concluded his general voir dire time by questioning the venire members' abilities to follow the law and the instructions given by the trial court regarding their duties.

At the conclusion of his general voir dire, Appellant's counsel indicated he still had a number of topics he wished to address with the venire panel as a whole. Those topics included further questions regarding mental anguish and other emotional distress forms of damages, their ability to award damages for lost income, and the professional backgrounds of the venire members. Appellant argued these questions might reveal various biases or prejudices, their views on lawsuits in general and tort reform, their views on attorneys in general or the attorneys representing the parties specifically, the role of circumstantial evidence, not allowing their individual sympathies play a role in their decision-making in the trial, and thoughts from the venire panel regarding Texas's driving laws. He objected again to the general voir dire time limitation of thirty minutes, which the trial court overruled.

Appellee's voir dire began with questions regarding whether the venire panel believed Appellant would be entitled to whatever damages she sought by virtue of Appellee's admission of fault. He also inquired about biases, prejudices, and whether the panel members could set aside their respective preconceived opinions and base their decision only on the evidence. He also asked them about pre-existing damage and whether they would be inclined to award damages for pre-existing damages or only new damage caused from the incident. He discussed the burden of proof, and the venire members' previous experience with motor vehicle accidents. Finally, he asked who on the panel had previously been involved in litigation as either a plaintiff or a defendant.

Following general voir dire, the venire panel was excused for a break and counsel discussed which venire members were going to be excused because they did not qualify for jury service or had other qualifying exemptions. Eight of the forty-eight panel members were excused from service for various reasons. Counsel then discussed strikes for cause with the trial court. The parties agreed to striking six additional jurors for cause after further voir dire. Each side then used their six peremptory strikes to strike an additional twelve venire members.

### *Trial*

At trial, the only two witnesses were Appellant and Appellee. Appellant's counsel called Appellee as the first witness, cross-examining him regarding extensively on how he caused the accident and whether he felt Appellant deserved to receive mental anguish or lost wages damages. Appellee did not dispute his tow dolly's presence in the right of way was the cause of the accident. On direct examination, Appellee testified after the accident, Appellant appeared to be walking around normally and said she was fine.

Appellant then testified. Her attorney questioned her at length on her upbringing, educational and employment background, as well as another motor vehicle accident she was

involved in which occurred several days prior to the subject accident. Following the first incident, she testified she had some soreness but returned to work almost immediately without any restrictions.

On the date of the car accident subject of the lawsuit, Appellant testified she began her shift as a delivery driver for Domino's at 9:00 a.m. She worked through her lunch break. Around 9:30 p.m., she completed a delivery and was on her way back to the Domino's location when the accident occurred. Appellant testified she struck the tow dolly attached to Appellee's truck while traveling approximately thirty-seven miles per hour and never saw it in the roadway prior to the accident. Following the collision, she believed she would experience some soreness but return to work shortly thereafter as she had in her previous accident. However, she claims her injuries worsened and as a result she suffered severe mental anguish due in large part to worry over whether certain pre-existing conditions she had would exacerbate and debilitate her. No medical evidence was put on at trial other than Appellant's testimony regarding the medical treatment she received and the symptoms she experienced.

After the close of evidence, the jury unanimously awarded $1,500.00 to Appellant for lost wages. No damages were awarded for mental anguish or other physical or emotional injuries.

Following a motion for new trial, which the trial court denied, Appellant timely filed this appeal.

## DISCUSSION

Appellant raises eight issues on appeal, which we include here as set forth in her brief:

1.   When a Trial Court limits the amount of time to conduct voir dire to a mere 30 minutes, *in every case regardless of the facts of the case*, is this arbitrary and unreasonable?

2.   Does a litigant have the right during voir dire to inquire about specific views that would prevent or substantially impair jurors from performing their duty in accordance with their instructions and oath?

5

3. When a Trial Court sets parameters for voir dire questioning, must the Trial Court take into consideration the complexity and uniqueness of each case?

4. Must court-set limits on voir dire questioning be flexible and subject to exceptions as justice and the circumstances or each case require?

5. Does a Trial Court's 30-minute limitation on the time for a litigant to conduct voir dire prevent a litigant from determining whether grounds exist to challenge for cause or deny a litigant intelligent use of her peremptory challenges?

6. Does a Trial Court's inflexible, 30-minute limitation on the time for a litigant to conduct voir dire deny a litigant her right to a fair and impartial jury?

7. Did the Trial Court abuse its discretion when arbitrarily and unreasonably limiting the amount of time for Appellant to conduct voir dire to a mere 30 minutes?

8. Did the Trial Court abuse its discretion when denying Appellant's motion for new trial when it denied the Appellant her right to a fair and impartial jury by arbitrarily and unreasonably limiting her ability to conduct voir dire to a mere 30 minutes?  [Emphasis in orig.].

Appellant's eight issues can be reduced to two areas of inquiry: 1) whether the trial court abused its discretion in imposing voir dire time limits of thirty minutes for general questioning plus one hour of individual questioning of venire members; and 2) whether the trial court abused its discretion in denying Appellant's motion for new trial because Appellant's voir dire time was constrained.

### *Standard of Review*

A reviewing court analyzes time constraints in voir dire and denials of motions for new trial under an abuse of discretion standard *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 753-54 (Tex. 2006)(voir dire); *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987)(motion for new trial). It abuses its discretion if it acts without reference to guiding principles or rules. *Enbridge Pipelines (E. Texas) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012). Another way of viewing the test is whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). If the trial court's decision lies within the zone

6

of reasonable disagreement, we must uphold it. *Diamond Offshore Services Limited v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018).

### *Time Limits in Voir Dire*

"[I]t is not only the right but the duty of the trial court to confine the examination of prospective jurors within reasonable limits. If this was not so, some trials would never terminate." *De La Rosa v. State*, 414 S.W.2d 668, 672 (Tex.Crim.App. 1967)(*citing Grizzell v. State*, 298 S.W.2d 816, 822 (Tex.Crim.App. 1956)). A court may not, however, refuse either side the opportunity to individually question prospective jurors, so long as it is done so with reasonable limitations. *Id.* In some cases, strict time limitations can have the same effect as refusing to allow counsel to ask certain questions of prospective jurors or question them regarding particular topics. *Id.* Such a limitation is rarely considered reasonable. As it pertains to time limits in voir dire, a trial court abuses its discretion in limiting a party's time to voir dire the venire panel when the limitation deprives the litigant of their right to effectively exercise challenges to venirepersons due to an inability to determine whether grounds for such strikes exist. *Babcock v. Northwest Memorial Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989).

As Appellee points out, the Court of Criminal Appeals in *Ratliff v. State* set forth three considerations in determining whether a trial court abuses its discretion on limiting time for the parties to voir dire potential jurors. *See id.*, 690 S.W.2d 597, 599-600 (Tex.Crim.App. 1985). They are (1) whether the party "attempt[ed] to prolong the examination of prospective jurors," (2) whether the questions left unasked to the panel were proper voir dire questions, and (3) whether jurors who actually served on the jury were not questioned by the party. *Id.* at 599-600. The time limitation, on its own, is not conclusive one way or another on the issue of reasonableness. *Id.* at 600. As the Court of Criminal Appeals observed, "[a] reasonable time limitation for one case may

not be reasonable for another. We caution that the amount of time allotted is not, by itself, conclusive. Various and unpredictable considerations such as the complexity of the case or the makeup of the venire may prolong a voir dire examination." *Ratliff,* 690 S.W.2d at 600.

In *Ratliff*, the trial court in an aggravated robbery case advised both sides they would be limited to one hour of voir dire each. *Id.* at 598. Before voir dire began, the judge discussed certain legal principles with the panel, "including the presumption of innocence, the burden of proof, the defendant's right not to testify, and trial procedure." *Id.* After the State conducted its voir dire, which lasted forty-three minutes, the accused began his voir dire. *Id.* He began voir dire by discussing other principles of law with the venire, and then questioned the panel row by row about whether they knew any of the State's attorneys or witnesses, whether any of them or their family members had been a victim of a crime; any connections they had with law enforcement or prior grand jury service; and their ability to act fairly and impartially as jurors. *Id.* at 598-99. Each side's hour-long limit included their time for voir dire of individual panel members and strikes for cause. *Ratliff*, 690 S.W.2d. at 599. When the plaintiff's hour concluded and he still had questions remaining, the court informed him he would have an additional fifteen minutes. *Id.* In fact, the court gave him an extra twenty-one minutes, which he used to question seven more venire members individually. *Id.* He was then given fifteen minutes to make a closing statement to the venire panel. *Id.* The defendant objected to the time limitation and perfected a bill of exception, complaining he had only questioned eleven jury members and had an additional fifteen questions to ask which he alleged were necessary to adequately exercise his peremptory challenges. *Id.*

In examining the circumstances presented by the appellant in *Ratliff*, the Court of Criminal Appeals considered making challenges for cause and discussing issues which the trial judge can eat into one's time for voir dire, as was the case there. *Id.* at 600. The Court of Criminal Appeals

also found the appellant did not try to prolong voir dire unnecessarily, or "spend an inordinate amount of time lecturing the jury." *Ratliff*, 690 S.W.2d at 600. The court also found most of the questions the appellant sought to ask the venire members were "proper areas of inquiry for the purpose of intelligently exercising either a peremptory challenge or a challenge for cause." *Id.* Additionally, the court reasoned the appellant only had time to examine ten panel members individually, and only three of those ten were on the jury. *Id.* Based on the combination of (a) several persons on the jury not having been examined by the appellant due to the time limitation, and (b) the remaining questions to be asked were relevant to exercising his challenges, the appellant in *Ratliff* adequately showed harm. *Id.* at 600-01. The court of criminal appeals sustained error on this issue.

While constitutional considerations concerning voir dire and a party's right to a fair trial are perhaps most evident in criminal cases, civil cases likewise raise issues related to time constraints in voir dire. We are not the first intermediate court of appeals to apply the *Ratliff* factors to a civil case. *See, e.g., Greer v. Seales*, No. 09-05-001-CV, 2006 WL 439109, at *5 (Tex.App.--Beaumont Feb. 23, 2006, no pet.)(mem. op.);[1] *De La Garza v. Beckett*, No. 13-00-785-CV, 2002 WL 34214278, at *2 (Tex.App.--Corpus Christi Aug. 22, 2002, no pet.)(not designated for publication); *McCoy v. Wal-Mart Stores, Inc.*, 59 S.W.3d 793, 797 (Tex.App.--Texarkana 2001, no pet.).[2]

---

[1] While the *Greer* court cited the *Ratliff* factors and their applicability to civil cases, it determined the appellant's failure to preserve the issue of the voir dire time limitations precluded the court from considering it on appeal. *Greer*, 2006 WL 439109, at *5.

[2] This Court also previously acknowledged the *Ratliff* factors in protecting litigants' rights to adequate voir dire in the criminal context in its discussion of trial-timeline limitations in civil cases. *See Walton v. Canon, Short & Gaston*, 23 S.W.3d 143, 155 (Tex.App.—El Paso 2000, no pet.)(McClure, J., concurring). However, at that point in time, the *Ratliff* factors had not been applied to a civil case.

In *McCoy*, the jury was tasked with deciding liability and damages in a personal injury case where various items allegedly fell on the plaintiff's head while shopping in the store. *McCoy*, 59 S.W.3d at 795. The trial court limited voir dire to thirty minutes for each side, which the parties were advised of before voir dire began. *Id.* The jury found for the defendant on liability. *Id.* The Ninth Court of Appeals held the time limitation on voir dire was reasonable under the circumstances, and it was counsel's failure to adequately budget his time during voir dire which resulted in his inability to question the venire members on particular subjects, rather than the trial court's time limitation being unreasonable. *Id.* at 797-98.

*De La Garza*, like the instant case, also involved a two-vehicle car accident. *De La Garza*, 2002 WL 34214278, at *1. Voir dire was also limited to thirty minutes per side. *Id.* The jury found the plaintiff twenty percent liable for the incident and defendant eighty percent liable, and awarded damages of $56.00, which accounted for eighty percent of the $70.00 emergency room bill the plaintiff paid for treatment following the incident. *Id.* Plaintiff appealed, arguing the trial court erred in limiting voir dire to thirty minutes per side and refusing her extra time when requested. *Id.* at *2. There, our sister court in Corpus Christi found the limitation was reasonable, considering the issues to be decided were simple, and the remaining questions plaintiff sought to question the jury about were largely repetitive of issues they had already been questioned about. *Id.* at *3.

Appellant and Appellee each cite to cases where courts have gone one way or the other on what time limitations are reasonable in voir dire. Appellant argues most cases where time restrictions were found to be unreasonable were those limiting voir dire to under an hour per side. *See Tamez v. State*, 27 S.W.3d 668, 673 (Tex.App.--Waco 2000, pet. ref'd)(*citing McCarter v. State*, 837 S.W.2d 117, 118 (Tex.Crim.App. 1992)). She cites to three cases where voir dire limits of forty-five minutes per side was held to be unreasonable under those cases' circumstances. *See*

10

*Rios v. State*, 4 S.W.3d 400, 401 (Tex.App.--Houston [1st Dist.] 1999, pet. granted); *Morris v. State*, 1 S.W.3d 336, 339 (Tex.App.--Austin 1999, no pet.); *Tobar v. State*, 874 S.W.2d 87, 88 (Tex.App.--Corpus Christi 1994, pet. ref'd). Likewise, Appellee cites to cases where thirty minutes was upheld by a reviewing court as proper. *See McCoy.*, 59 S.W.3d 793; *Barrett v. State*, 516 S.W.2d 181 (Tex.Crim.App. 1974); *Everitt v. State*, No. 01-15-01023-CR, 2017 WL 3389638, at *4-6 (Tex.App.--Houston [1st Dist.] Aug. 8, 2017, pet. ref'd)(mem. op., not designated for publication); *Glanton v. State*, No. 05-00-01844-CR, 2002 WL 1308804 (Tex.App.--Dallas June 17, 2002, pet. ref'd)(not designated for publication); *Phillips v. State*, No. A14-90-00757-CR, 1991 WL 148719, at *3 (Tex.App.--Houston [1st Dist.] Aug. 8, 1991, pet. ref'd).

As *Ratliff* and its progeny demonstrate, no black-and-white rule exists whereby thirty minutes is unreasonable in every circumstance, and an hour is reasonable in all circumstances. *See Ratliff*, 690 S.W.2d at 600. Every case's unique circumstances must be examined to determine whether the limitation was reasonable, given the three considerations delineated in *Ratliff*. *Id.* at 599. Accordingly, we proceed with our analysis under this framework.

### 1. Did Appellant adequately budget her allotted time?

In the instant case, Appellant's counsel was aware prior to the beginning of voir dire that general voir dire would only last thirty minutes. Regardless of how they chose to allocate their time, the trial court informed them he intended to cut off general voir dire at thirty minutes for each side. Liability was not at issue. Past and future medical expenses were not at issue. The only contested issues were lost wages and mental anguish damages.

The record before us does not give a detailed time breakdown showing how many minutes were spent by any party on a particular topic of questioning. Appellant began general voir dire by choosing several venire members to inquire on issues about which they are passionate. The issues

11

discussed by the venire members and Appellant's counsel ranged from community service to travel to environmental issues to family. Next, Appellant gave a statistic to the venire regarding injuries from motor vehicle accidents and asked individual venire members and the panel as a whole how they felt about that statistic, whether they found it shocking, and whether they believed persons who admit to causing a motor vehicle accident should be held responsible for their actions. Appellant specifically discussed with the venire panel whether any of them would be unwilling to award any damages because the at-fault person admitted to causing the incident, which revealed several venire members who were unwilling to do so and thus struck for cause.

Appellant also asked the venire panel if anyone would be unwilling to or uncomfortable awarding damages for mental anguish or pain and suffering since those types of damages are not quantifiable with hard data. His questions elicited responses from several venire members indicating they would not be able to award mental anguish or similar intangible damages, who were subsequently struck for cause. Based on time warnings given to counsel by the trial court, Appellant's questions on mental anguish and similar types of damages lasted approximately five minutes. Appellant concluded her general voir dire time by questioning the venire members' ability to follow the law and the instructions given by the trial court regarding their duties.

Questions regarding a potential juror's passion for the community is relevant to ascertain the level of responsibility they feel to act as a voice of the community. However, that line of questioning should be further down the list of priorities as compared to the likelihood venire members would award mental anguish damages. Further, questions to the venire regarding liability, while tangentially relevant regarding fault and responsibility, became moot when Appellee conceded liability prior to trial.

Appellant's counsel asked questions regarding venire members': 1) likelihood to award

mental anguish and other intangible damages; 2) ability to set aside bias and prejudice; 3) consider only the evidence; are of utmost importance to the issue the empaneled jury was ultimately required to decide. That is, whether Appellant would be entitled to lost wages and mental anguish damages arising out of the collision with Appellee's trailer dolly. However, the record reflects that line of questioning only comprised about ten of the thirty minutes of Appellant's time. Given the straightforward facts of the case, the Appellee's admission of liability prior to trial, and considering the jury charge questions, Appellant does not meet the bar for adequate use of her time during general voir dire.

**2. Were Appellant's remaining voir dire questions proper?**

Next, we consider whether Appellant's remaining questions were proper voir dire questions. At the conclusion of his general voir dire, Appellant's counsel indicated he had a variety of other topics he wished to address with the panel as a whole. Those topics included further questions regarding mental anguish and other emotional distress forms of damages, the venire members' ability to award damages for lost income, the professional backgrounds of venire members which Appellant argued might reveal various biases or prejudices, their views on lawsuits in general and tort reform, their views on attorneys in general or the attorneys representing the parties specifically, the role of circumstantial evidence, not letting their individual sympathies play a role in their decision-making on the jury, and thoughts from the panel regarding driving laws in Texas.

The topics regarding damages are certainly relevant; however, the record does not indicate what remaining questions Appellant's counsel intended to ask about damages that he was deprived of asking the venire panel during general voir dire. Appellant's counsel questioned the venire members about whether they could award damages for mental anguish or pain and suffering, and

13

lost wages. This line of questioning regarding damages elicited numerous responses from the venire members, some of whom were subsequently struck. Similarly, both sides asked questions regarding whether venire members could set aside their biases and prejudices and render a verdict based on the evidence, and those answers likewise resulted in more than one venire member being struck. There was also discussion involving lawsuits for personal injuries and whether such lawsuits might be frivolous, which resulted in at least two venire members being struck.

Regarding the remaining areas of inquiry, while they may be proper topics for voir dire, Appellant's lack of time to ask questions in those other areas is not necessarily the result of an improper time limit. *See Whitaker v. State*, 653 S.W.2d 781, 782 (Tex.Crim.App. 1983)(acknowledging a skilled attorney can always find additional topics of inquiry for questioning the jury, and inability to ask all such questions is not necessarily the result of an unreasonable time limitation). Without knowing specifically what questions Appellant intended to ask the venire members, we cannot adequately assess whether they would be relevant to determining the proclivities of potential jurors which could subject them from being stricken. *See S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex.App.--Houston [14th Dist.] 1996, writ denied)(failure to submit specific questions to be asked of the panel, rather than broad subject matters, fails to preserve error for appeal).

### 3. Only one juror remained unquestioned by Appellant

Finally, we consider whether any jurors, that were selected, were not questioned by Appellant during voir dire. Appellant argues her inability to voir dire the jury foreperson was the result of the improper time limitation imposed by the trial court. Further, this failure Appellant alleges resulted in the relatively small award of damages, despite the fact Appellee admitted fault prior to trial.

Following general voir dire, the venire panel was excused for a break and the parties' counsel discussed which venire members were going to be excused because they did not qualify for jury service or had other qualifying exemptions. Eight of the forty-eight panel members were excused from jury service for various reasons. Counsel then discussed strikes for cause with the trial court. The parties agreed to striking six additional venire members for cause after conducting additional individual voir dire. Each side then used their six peremptory strikes to strike an additional twelve venire members.

Notably, neither party asked to voir dire the prospective foreperson individually. Our review of the record reflects the trial court did not refuse individual voir dire of a specific venire member for either party. Therefore, we are unable to ascertain whether additional time remained for individual voir dire of the prospective jury foreperson or any other potential juror. Neither requested additional individual voir dire of a particular venire member which was subsequently denied. Thus, for the third *Ratcliff* prong, we fail to uncover any evidence of Appellant being denied a right to question a venire member who ultimately became a juror in this case.

Having considered each of the three *Ratliff* factors, we find the trial court did not abuse its discretion in limiting general voir dire to thirty minutes per side. Undergirding that finding is the fact each party was granted an additional hour to conduct individual voir dire of the venire members. The record further reflects that the trial court allowed individual voir dire unfettered and neither side, at trial, objected to the inability to conduct individual voir dire with other specific venire members. Given the contested issue centered on mental anguish damages and lost wages, we find the trial court adequately exercised its discretion in limiting voir dire under the unique circumstances in this case. Appellant's first seven issues are overruled.

***Motion for New Trial***

15

In his eighth issue, Appellant claims the trial court abused its discretion by denying his motion for new trial based upon her alleged lack of adequate time to voir dire the venire panel. Because we find the trial court did not abuse its discretion in imposing a thirty minute time limit for general voir dire per side, with an additional hour of individual questioning of venire members, we find it did not abuse its discretion in denying Appellant's motion for new trial.

Appellant's eighth issue is overruled.

## CONCLUSION

Having overruled each of Appellant's eight issues, we affirm the judgment of the trial court.

August 31, 2020

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.