Melvin GOODSPEED, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00227–CR.

Court of Appeals of Texas, Texarkana.

Submitted July 11, 2003.

Decided Oct. 2, 2003.

James E. Davis, Texarkana, for appellant.

Nicole Habersang, Assistant District Attorney, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

This case presents the issue of whether trial counsel's conduct was so deficient, and presented professional errors of such magnitude, that it caused prejudice to the defendant, and that, but for counsel's ineffective assistance, there is a reasonable probability the result of the case would have been different. If so, the legal process has failed and we can have no confidence in the outcome of the trial.

A jury convicted Melvin Goodspeed of aggravated sexual assault and assessed punishment at ninety-nine years' imprisonment. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i) (Vernon 2003) (child victim). In a single point of error, Goodspeed contends he received ineffective assistance of counsel at trial from his attorney because counsel, among other things, conducted no meaningful voir dire examination and used two peremptory challenges on veniremembers previously excused by the court. We reverse the judgment and remand the case to the trial court for a new trial.

## I. Standard of Review

The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on a claim of ineffective assistance, an appellant must, by a preponderance of the evidence, prove: (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient representation prejudiced appellant's defense. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim.App.2002); *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App.1999). To meet this burden, an appellant must show that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000). In other words, the appellant must prove counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052. If, however, "there is at least the possibility that the conduct could have been legitimate trial strategy," then we must "defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Murphy v. State*, 112 S.W.3d 592, 601 (Tex.Crim.App. 2003).

## II. Analysis

■ Goodspeed complains his trial counsel's voir dire consisted of no meaningful questions. To its credit, the State "concedes that Goodspeed's trial counsel did not ask *any* questions of the venire panel as a whole during the defendant's voir dire." [1] (Emphasis added.) The State, however, contends Goodspeed's trial counsel opted not to ask repetitious questions in light of the State's own extensive, nearly two-hour-long voir dire. Thus, the State argues counsel's failure to ask repetitious questions should not constitute deficient performance.

■ A defendant's constitutional right to counsel includes the right to question prospective jurors so the defendant may intelligently exercise peremptory challenges. *See Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (defendant requires counsel's guiding hand at every step of proceedings); *Howard v. State*, 941 S.W.2d 102, 108 (Tex.Crim.App. 1996); *Roise v. State*, 7 S.W.3d 225, 244 (Tex.App.-Austin 1999, pet. ref'd). The Sixth Amendment guarantees the "assistance of counsel." U.S. CONST. amend. VI. Part of this constitutional guarantee is an adequate voir dire to identify unqualified jurors. *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992) (citing *Dennis v. United States*, 339 U.S. 162, 171–72, 70 S.Ct. 519, 94 L.Ed. 734 (1950)). Essential to this guarantee is the right to question veniremembers in order to intelligently exercise peremptory challenges and challenges for cause. *Linnell v. State*, 935 S.W.2d 426, 428 (Tex.Crim. App.1996) (citing *Nunfio v. State*, 808 S.W.2d 482 (Tex.Crim.App.1991); *Dinkins v. State*, 894 S.W.2d 330, 344–45 (Tex. Crim.App.1995)). The right to propound questions on voir dire, in order to intelligently exercise peremptory challenges, is of the greatest importance. *Hernandez v. State*, 508 S.W.2d 853 (Tex.Crim.App.

---

1. The record overwhelmingly supports the State's concession. The orations of Goodspeed's counsel during voir dire last a mere seven pages of the record and consist of no questions to, nor answers from, the venire panel.

1974). Voir dire is, perhaps, the most important part of any jury trial. *See McCoy v. Wal–Mart Stores, Inc.,* 59 S.W.3d 793, 801 (Tex.App.-Texarkana 2001, no pet.); H. Lee Godfrey, *Civil Voir Dire in Texas: Winning the Appeal Based on Bias or Prejudice,* 31 S. TEX. L.REV. 409, 437 (1990) (citing J. APPLEMAN, PREPARATION & TRIAL 174 (1967)). Voir dire determines the composition of the jury that not only determines guilt, but may also assess punishment. Thus, what occurs during voir dire permeates the entire trial.

■ The purpose of voir dire questioning is to determine whether a potential juror should be challenged for cause or peremptorily, or whether he or she should be accepted by the examining party for service on the jury. *Eason v. State,* 563 S.W.2d 945, 946–47 (Tex.Crim.App.1978); 3 CHARLES E. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 419 (13th ed.1991). The questioning party may ask a potential juror any pertinent question "tending to establish the ground for challenge, such as disqualification for service on any jury, implied bias, or actual bias." 3 CHARLES E. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 420 (13th ed.1991). Such questions are necessary because "[f]ull knowledge of all relevant matters is essential to a fair exercise of the right to challenge either for cause or peremptorily...." 3 CHARLES E. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 421 (13th ed.1991).

Voir dire may also serve to prepare the jury for difficulties likely to be encountered in the case, it may serve to educate the jury on the applicable law, or it may serve to curry favor for one side or the other. 3 TEXAS CRIMINAL PRACTICE GUIDE: TRIAL § 72.03[1] (Matthew Bender & Co. ed., Aug. 2003). If a defendant's lawyer fails to question prospective jurors during voir dire, then he or she does nothing to solicit evidence for use in challenging the juror, does nothing to educate the jury about the applicable law or potential difficulties of the case, and does nothing to engender favor for the defendant. It has been held that a lawyer who asks no questions of a venire during voir dire provides *no assistance* to the defendant, and no conceivable trial strategy would permit counsel to waive voir dire. *See Miles v. State,* 644 S.W.2d 23 (Tex.App.-El Paso 1982, no pet.).

Counsel's waiver of Goodspeed's right to solicit information from prospective jurors (when such information could only help assist in intelligently exercising peremptory strikes) falls well below the objective standard of reasonableness. Given the need for fair and impartial jurors, careful and precise voir dire questioning by defense counsel usually tends to elicit answers that form the basis of a challenge for cause or, alternatively, provide a gender or race-neutral reason for the exercise of a peremptory challenge.[2]

Moreover, by failing to examine the panel, the defense never had an opportunity to determine if any of the members of the venire should have been disqualified for

---

2. In *Abron,* the trial court refused to allow the defendant to ask prospective jurors questions about racial prejudice. (The defendant was black and charged with rape; the victim was white.) The Texas Court of Criminal Appeals stated, "Answers to the more specific questions regarding racial prejudice would have been valuable to appellant because they could have furnished a basis for the intelligent exercise of peremptory challenges. Deprivation of this valuable right is a showing of injury sufficient to necessitate reversal." *Cf., Abron v. State,* 523 S.W.2d 405, 409 (Tex.Crim.App. 1975). The *Abron* court then reversed the defendant's conviction and remanded the case for a new trial. *See also Smith v. State,* 513 S.W.2d 823, 826 (Tex.Crim.App.1974) (voir dire questions elicit grounds for challenge for cause as well as basis for use of peremptory strikes).

not being able to consider the full range of punishment. Goodspeed was eligible for community supervision (formerly referred to as probation). *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 4(e) (Vernon Supp.2003). The jury, therefore, had the authority to grant community supervision as a possible punishment in the event it found Goodspeed guilty. To serve on the jury, each veniremember must be able to consider community supervision in assessing punishment. Tex.Code Crim. Proc. Ann. art. 35.16(c)(2) (Vernon Supp.2003). Experience tells us that many people are unable to consider community supervision as a punishment for a sexual assault charge, especially when the victim is a child. It is not an aberration for entire jury panels to be dismissed because such a large number of jurors express opposition to community supervision in these cases and, by law, are unable to serve.

The State responds that defense counsel's failure to ask about community supervision is not harmful because the State explained to the jury Goodspeed was eligible for community supervision. However, a careful reading of the record reveals the State did not clearly ask the specific question of whether each panelist could consider community supervision. The State did explain that the range of punishment was "probation up to 99 years or life" and then asked the panel if there was anyone who would not consider it. Before receiving any response, the State then began to give a lengthy (almost a full page in the record) explanation concerning assessing punishment, without mentioning community supervision. The ultimate question after the explanation was, "I'm assuming all of you are telling me that you would be able to consider the range, the penitentiary time, ... if the facts warranted incarceration. You all can do that for me? Okay." Accordingly, we are unpersuaded that the State's mention of community supervision—without clearly inquiring as to whether the veniremembers could consider community supervision as a sentencing option-ameliorates defense counsel's abdication of his responsibilities as Goodspeed's advocate. *See Armstrong v. State,* 897 S.W.2d 361, 363 (Tex.Crim.App.1995) (defense counsel has obligation to ask questions calculated to bring out information that might indicate juror's inability to be impartial). Such conduct was artful advocacy on behalf of the State, but required a proper response and clarification from the defense attorney. The failure to respond bolsters our conclusion that counsel's assistance fell below reasonable standards of conduct during this critical stage of the trial. In this case, we can find no reasonable trial strategy permitting defense counsel to abandon the duty to question the venire.

■■ Our finding that counsel's performance was deficient is further required by the fact that Goodspeed's trial attorney used peremptory strikes on prospective jurors Sharon Kelly and Jennie George, even though these members of the venire had already been excused for cause by the trial court. Goodspeed's trial attorney essentially wasted two peremptory strikes. The right to effective assistance of counsel during voir dire necessarily includes counsel's *intelligent* use of peremptory strikes. *See, e.g., Taylor v. State,* 109 S.W.3d 443, 452 (Tex.Crim.App.2003) ("Texas Constitution's right to counsel encompasses the right to ask proper questions in order to intelligently exercise for cause and peremptory challenges...."); *Abron,* 523 S.W.2d at 409. We do not agree with the State's suggestion that the use of two peremptory challenges on people who had been excused does not cast extreme doubt on whether Goodspeed's counsel was actively participating in the adversarial process to ensure a fair and just trial.

Having found counsel's performance during voir dire fell below an objective standard of reasonableness, we must now decide whether counsel's performance so undermined the adversarial process that the trial cannot be seen as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. Given the severe facts of this case, the answer is an unqualified "Yes."

Like a tiny pebble thrown in the midst of a calm lake, the ripple effects of ineffective assistance during voir dire permeate the trial from beginning to end. It is the loss of a chance to educate the panel—the missed opportunity to explain applicable law in a light favorable to the client. It is the abandonment of counsel's first opportunity to curry favor among the jury for the client. It is counsel's abdication of a responsibility to solicit information that permits the intelligent, rather than wasteful, exercise of peremptory strikes. A proper voir dire examination would have ensured that all jurors were qualified to consider the entire range of punishment. Those jurors having some hesitation or reluctance to consider the full punishment range could have been identified. If the attorney had not forfeited two peremptory challenges by striking jurors previously excused by the court, at least two additional jurors with reluctance to consider the full range of punishment could have been struck by the defendant. Without doubt, had counsel not exercised peremptory challenges on veniremembers excused by the court, the jury would have been differently composed. When defense counsel's performance during the voir dire of a criminal trial falls below objective norms, without any reasonable basis in trial strategy, as is the case here, we can only conclude we have no confidence in the outcome of the trial. We believe under these circumstances there is a reasonable probability that, but for counsel's deficient conduct, the resulting sentence would have been different. This undermines confidence in the outcome of the trial. Any different result would have benefitted the defendant. We sustain Goodspeed's point of error.

Our holding is not based on the jury's assessment of a ninety-nine-year sentence, but in our belief that counsel's deficient representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *See id.* Thus, for the reasons stated, we hold Goodspeed did not receive the assistance of counsel required under the United States and Texas Constitutions.

We reverse Goodspeed's conviction and remand the case to the trial court for a new trial.