Opinion Issued July 16, 2009









Opinion Issued July 16,
2009

 

 

 

 

 

 

 

 

 

 

 

 

 










 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00173-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



ALEJANDRO FARIAS GONZALEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause No. 1152889

 








 



MEMORANDUM OPINION

           The State charged
Alejandro Farias Gonzalez with aggravated sexual assault of a child for the
rape of his daughter, M.G.  Tex. Penal
Code Ann. § 22.021 (Vernon 2003).  A jury found Gonzalez guilty but
could not agree on his punishment.  The trial court empaneled a new jury to
decide punishment, which assessed punishment at forty years’ confinement. 
Gonzalez appeals, contending that his trial counsel failed to render effective
assistance in six ways: (1) counsel failed to obtain an investigator to locate
witnesses; (2) during the guilt/innocence phase of the trial, counsel failed to
object to the admission of, or ask for a redaction of, Gonzalez’s video-taped
statement to the police; (3) during the punishment phase, counsel failed to
object to the lack of notice and admission of extraneous offenses; (4) counsel
failed to obtain a free transcript of testimony from the guilt/innocence phase
to aid in impeaching witnesses in the second punishment trial; (5) in the
punishment trial, counsel failed to object to the State’s closing argument
about Gonzalez’s lack of remorse, which Gonzalez contends constitutes a comment
on his failure to testify; and (6) counsel failed to object to the State’s
closing argument referencing facts not in evidence.  After reviewing the
record, we affirm the judgment of the trial court.

Background

In August 2006, Gonzalez
lived in north Houston with his wife and children, including thirteen-year-old
M.G.  On the morning of August 1, M.G. went into her parents’ bedroom and
climbed in bed between them, something she had done regularly since childhood. 
All three lay in bed for a few minutes, and then M.G.’s mother got up and left
the house to do errands.  M.G. testified that after her mother left, her father
removed her shirt and began sucking and biting her breasts.  He removed her
shorts and underwear.  She crossed her legs to try to prevent him from
penetrating her, but he did so, ejaculating inside of her vagina.  M.G. got up,
dressed, and went across the hall to the room she shared with her younger
sister, C.G.  C.G. testified that M.G. came into the room and was crying loudly
enough to wake C.G.  C.G. was concerned because M.G. rarely cries.  M.G. told
C.G. that she thought their father had tried to rape her, but that she believed
it must have been a dream.  C.G. wanted to tell their mother, but M.G. told her
not to tell anyone.  M.G. did not confront her father or tell her mother about
what happened.

M.G. testified that a few
days later, she was in the car with her father, and he pulled her into the
front seat.  Gonzalez asked M.G. if she remembered what happened.  M.G.
testified that at this point, she knew the rape had really happened.  M.G. told
Gonzalez that she remembered, but she did not want to talk about it.  She told
him that she could call the police or tell her mother.  M.G. testified that he
told her to go ahead and call the police and acted like he had done nothing
wrong.  He told her that ever since she was a little girl, he had always
thought he would be her first.

M.G. testified that,
after the rape, her father acted normally except that he bought her a cell
phone about a week later and did not buy one for C.G., which was unusual
because he always bought them both the same things.  C.G. testified that her
father and sister were distant after the rape, whereas they had been close
before.  She also testified that Gonzalez bought M.G. a cell phone but did not
buy one for her.

In July 2007, M.G. and
her parents had an argument about M.G.’s boyfriend.  After the argument, M.G.’s
older brother, A.G., wanted to talk to M.G. about the situation.  He testified
that he and M.G. were close, and he was protective of his younger sisters. 
M.G. went into A.G.’s room, and he began questioning her.  She started crying
and told A.G. that their father raped her.  At first, A.G. was confused and did
not understand what M.G. was saying.  When he understood what M.G. was saying,
A.G. found his father and confronted him about the allegations.  Gonzalez
denied the allegations at first and was offended that A.G. would accuse him of
raping his daughter, but later, he admitted to touching M.G.’s leg.  

Later, Gonzalez agreed to
talk to Houston Police Officer A. Moreno, an investigator in the juvenile sex
crimes unit.  Police videotaped the interview.  In the interview, Gonzalez
admitted to groping M.G.’s breasts and trying to kiss them.  He stated that he
tried to put his penis between M.G.’s legs, but she locked her legs together. 
He admitted that he touched her legs with his penis and then he ejaculated.  In
this same interview, Gonzalez also mentioned that he had been unfaithful to his
wife.

During the punishment
phase of the trial, the State elicited much of the same testimony from M.G., C.G.,
and A.G.  Additionally, during the punishment phase, A.G. testified about
Gonzalez’s tendency to minimize his actions when accused of wrongdoing.  As an
example, A.G. testified that Gonzalez had been unfaithful to his wife, but
whenever she accused him of being unfaithful, he would act hurt that she would
accuse him of such a thing.  A.G. further testified that, when he was nine
years old, he lived with Gonzalez and his mistress in the United States while his mother and sisters lived in Mexico.  During that time, A.G. witnessed a
fight between Gonzalez and the mistress which resulted in Gonzalez dragging the
woman up a set of stairs in a chokehold. 

Discussion

Gonzalez alleges that his
trial counsel was ineffective.  To prevail on a claim of ineffective assistance
of counsel, the defendant must show that (1) his counsel’s performance was
deficient and (2) a reasonable probability exists that the result of the
proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The first prong of Strickland requires the
defendant to show that counsel’s performance fell below an objective standard
of reasonableness.  Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999).  Thus, the defendant must prove objectively, by a preponderance of
the evidence, that his counsel’s representation fell below professional
standards.  Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002).  The second prong requires the defendant to show a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different absent the deficient performance.  See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see
also Thompson, 9 S.W.3d at 812.  In reviewing counsel’s performance, we
examine the entire representation to determine the effectiveness of counsel,
indulging a strong presumption that the attorney’s performance falls within the
wide range of reasonable professional assistance or trial strategy.  Thompson,
9 S.W.3d at 813.  Furthermore, a claim of ineffective assistance must be firmly
supported in the record.  Id. (citing McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996)).  Gonzalez challenges counsel’s actions
during both the guilt-innocence and punishment phase of the trial.  Strickland
governs claims of ineffective assistance during the punishment phase.  Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

          The record here is silent
as to counsel’s trial strategy.  Where the record does not offer an explanation
for trial counsel’s actions, the reviewing court presumes that counsel made all
significant decisions in the exercise of reasonable professional judgment.  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Broussard
v. State, 68 S.W.3d 197, 199 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d).  Without testimony from trial counsel, we cannot meaningfully address
trial counsel’s strategic reasons for the actions that Gonzalez alleges
constitute ineffective assistance.  See Davis v. State, 930 S.W.2d 765,
769 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d).  Even if counsel’s
actions could not be characterized as reasonable trial strategy, Gonzalez must
satisfy the second prong of Strickland, that the outcome probably would
have been different.

          Gonzalez first contends
that trial counsel rendered ineffective assistance by failing to use an
investigator to find favorable defense witnesses.  Counsel asked for
investigative funds in the trial court, but the trial record does not show a
ruling on that motion.  The record contains no evidence as to whether trial
counsel used an investigator.  Trial counsel applied for subpoenas for eleven
different witnesses and, in fact, called Gonzalez’s brother as a witness at the
punishment hearing.  Gonzalez does not point to any available favorable
witnesses.  Gonzalez, thus, has not established that any particular witnesses
were available to testify who would benefited his defense and that counsel
failed to call them.  See Ex parte White, 160 S.W.3d 46, 52 (Tex. Crim.
App. 2004).  We therefore hold that Gonzalez failed to meet his burden to show
that counsel was ineffective on this ground.

          Second, Gonzalez complains
about counsel’s failure during the guilt-innocence phase to object to the
admission of, or request a redaction of, the video-tape and transcript of his
statement to Officer Moreno, in which Gonzalez admitted that he had been
unfaithful to his wife.  Even if counsel’s failure to object fell below a
reasonable professional standard, under the second prong of Strickland,
Gonzalez fails to explain how the outcome of his trial would have been
different but for the admission of this evidence.  Given the testimony of all
three of his children regarding Gonzalez’s assault of M.G., Gonzalez’s admission
that he was unfaithful to his wife is unlikely to have affected the jury’s
determination of Gonzalez’s guilt.

          Gonzalez likewise complains
that trial counsel failed to object to the admission of “several bigamy
offenses” that the State did not give notice of its intent to introduce during
the punishment phase.  At the punishment hearing, the trial court admitted two
extraneous offenses: a misdemeanor assault and a misdemeanor offense of driving
while intoxicated.  The State notified Gonzales of its intent to introduce
these offenses, and he stipulated to both of them.  The State introduced no
other extraneous offenses.  We thus hold that the record does not support a
claim that the State introduced “bigamy” offenses during the punishment phase.

          Gonzalez next contends that
trial counsel was ineffective because she failed to obtain a transcript of the
testimony during the guilt-innocence phase for the purpose of impeaching
witnesses during the second punishment trial.  Gonzalez asserts that, during the
guilt-innocence phase of trial, M.G. testified that she scratched and bit
Gonzalez while he was raping her, but she did not include those facts in her
testimony during the punishment phase of the second trial.  Gonzalez also
contends that trial counsel should have impeached C.G. because during
guilt-innocence she testified that she believed Gonzalez had raped M.G. because
of the way that M.G. and Gonzalez behaved after the crime, but during
punishment, C.G. said she believed M.G. because M.G. acted as if the rape was
real.  The record here is silent as to whether or not counsel ordered a trial
transcript.  Gonzalez has also failed to show it was not reasonable trial
strategy for counsel to fail to cross-examine M.G. and C.G. on these
statements, as the statements are not notably in contradiction of other
testimony.  See Heiman v. State, 923 S.W.2d 622, 627 (Tex. App.—Houston
[1st Dist.] 1995, pet. ref’d) (holding that it was sound trial strategy to
refrain from attacking victim’s character with evidence of past sexual behavior
because jury might have found strategy repugnant, especially because appellant
was victim’s father); Hines v. State, 144 S.W.3d 90, 95 (Tex. App.—Fort Worth 2004, no pet.) (holding that it was sound trial strategy for counsel
to avoid attacking victim by impeaching her with a prior video-taped statement
and to avoid keeping victim on the stand longer than necessary).  

          Next, Gonzalez contends
that trial counsel failed to object to the State’s comment in its closing
argument in the punishment hearing regarding Gonzalez’s lack of remorse. 
During closing argument, the prosecutor said,

Remorse.  And in this case, there is a complete and
utter lack of remorse.  He doesn’t have any remorse for what he did.  I hope
you’ve been watching him throughout the trial because he’s had the same blank
stare, this look on his face that he has now.  As each of his children took the
stand, he didn’t look upset.  He didn’t look sad.  He’s not remorseful about
what he did.  He tells Officer Moreno, Oh, I felt very bad.  I asked my family
for forgiveness, but you heard from [M.G.], you heard from [A.G.], that never
happened.  He never asked them for forgiveness.

 

Gonzalez contends that the
prosecutor’s statement constitutes a comment on his failure to testify.  The
State violates a defendant’s Fifth Amendment right against compelled
self-incrimination by referring to a defendant’s invocation of his right not to
testify.  Canales v. State, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003); Emigh
v. State, 916 S.W.2d 71, 73 (Tex. App.—Houston [1st Dist.] 1996, no writ). 
To be improper, a comment must clearly refer to the defendant’s failure to
testify.  Canales, 98 S.W.3d at 695.  The nature of the comment must be
either “manifestly intended” or of such a character that it would “necessarily
and naturally” direct the jury’s attention to the defendant’s silence.  Id.  A comment that, at best, is indirect or allusive does not violate the
defendant’s Fifth Amendment rights.  Id.  

Here, the prosecutor’s
statement about remorse does not amount to a comment on Gonzalez’s failure to
testify.  The prosecutor specifically referenced Gonzalez’s body language and
facial expressions during the trial.  He also referred to M.G. and A.G.’s
testimony that Gonzalez had never expressed remorse to either of them, and
Gonzalez’s contradictory statement to Officer Moreno that he was sorry.  This
left the jury with some basis to determine whether or not Gonzalez was
remorseful on the testimony admitted.  Thus, we conclude that Gonzalez’s counsel’s
failure to object to the State’s argument did not fall below a reasonable
professional standard.

          Finally, Gonzalez contends
that his counsel was ineffective because she failed to object to the State’s
closing argument during punishment about M.G.’s future wedding day.  The
prosecutor argued,

One day, hopefully, she’ll meet the man of her dreams,
get married, walk down the aisle . . . [S]he won’t have her
father giving her away at the wedding.  She’ll just think about how he raped
her.  One day maybe she’ll have kids of her own, a daughter of her own to look
after, and she’ll never feel truly safe leaving her alone with her husband
because of what happened to her as a little girl.

 

Gonzalez complains that the
prosecutor argued about facts not in evidence, and his argument is purely
speculative and highly prejudicial because it plays to the emotions of the
jury.  The prosecutor’s argument, however, was based on evidence introduced at
the punishment phase from a clinical psychologist that child rape victims have
difficulty in their future relationships with a spouse.  Gonzalez does not show
that the prosecutor’s punishment argument was not a reasonable inference from
the evidence presented, or that any defense objection to this argument would
have been successful.

Conclusion

Considering the totality
of the representation, Gonzalez’s ineffective assistance of counsel claims must
fail because Gonzalez has not established that his trial counsel’s performance
fell below a reasonable professional standard or that the outcome of his trial
would have been different but for counsel’s alleged errors.  We therefore
affirm the verdict of the trial court.

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Judges Keyes,
Hanks, and Bland.

Do not publish.  Tex. R. App. P. 47.4